## Joseph E. Palmer, Inc. v. Easttown Township Board of Adjustment

*John O. Platt, Jr.*, for appellant.
*Rogers & O'Neill*, for appellee.

KURTZ, J., April 10, 1963.—Appellant owns 6.539 acres in Easttown Township, this county, which is located within a "Business District" as that term is used in the zoning ordinance of said township. Under an amendment to section 701 thereof adopted in 1959, and now in effect, it is provided that within such a district a building may be erected, altered or used, and a lot or premises may be used for certain enumerated purposes, one of which is set forth as follows: "1. Single-family or two-family detached or semi-detached dwelling or boarding house."

Appellant applied to the zoning officer of the township for building permits and certificates of occupancy for four cinder block and frame structures to be erected on said tract, each of which would have an area of 5,916 square feet, a height of 27 feet and contain 71,980 cubic feet of space. The proposed use of each as set forth in the application was: "2-Two Family Semi-detached Dwellings".

The zoning officer refused to issue the permits, assigning as his reason: "The proposed units, each designed to house four (4) families, are not permitted in the Business District in which your land is located."

Appellant appealed that refusal to the zoning board of adjustment and upon its affirmance of the zoning officer's decision has now appealed to this court. No testimony has been taken here. Accordingly, our function is to now examine the record to determine whether the board of adjustment has been guilty of a manifest abuse of discretion or an error of law: Anderle Appeal,

350 Pa. 589 (1944) ; Berberian Zoning Appeal, 351 Pa. 475 (1945) ; Berman v. Exley, 355 Pa. 415 (1947) ; Reininger Zoning Case, 362 Pa. 116 (1949) ; Michener Appeal, 382 Pa. 401 (1955) ; Landau Advertising Co., Inc. v. Zoning Board of Adjustment, 387 Pa. 552 (1957) ; Van Sciver v. Zoning Board of Adjustment, 396 Pa. 646 (1959).

Reference to the plan attached to the applications for the permits discloses that each of the four proposed structures is to be two stories in height, 76 feet long and 32 feet and 4 inches wide. The outside walls will be one foot thick. A basement will be installed the full length of each structure but will not extend over the full width. At the approximate midpoint of the long axis of each, a solid cinder block wall, eight inches thick, will be erected from the basement or ground level to the roof, thereby precluding access from one side of the wall to the other.

Two complete apartments, one on each floor, will be installed on either side of the wall. An entrance to each of the four apartments will be provided through four separate entryways. The entryways to the two second-floor apartments will be at the first floor level on either side of the wall, thence up stairways adjacent to that wall to the second story level, and those to the first-floor apartments will be from porches located at the outside ends of the living rooms of each.

Two heating systems will be installed in the basement areas, one on either side of the center wall. Each system will provide the heat for the two apartments directly above it. A chimney servicing both heating units will be located in the division wall which will contain two flues positioned adjacent to each other, one of which will be used by each unit. Appellant will be the owner of all of the proposed structures, at least as of the time of their completion. It proposes to rent the

apartments so constructed to the tenants who will occupy them.

Appellant contends that each of the proposed structures contains two two-family semi-detached dwellings, a use permitted within the provisions of the zoning ordinance. The township contends that each structure is a multiple family dwelling designed for the accommodation of four families, a use not permitted under the ordinance. It is to the resolution of that narrow issue that we must direct our attention.

The ordinance under consideration does not undertake to define the term "two-family semi-detached dwelling". However, it does define a "two-family dwelling" as being: "A building designed for and occupied exclusively as a home or residence for two families": The Easttown Township Zoning Ordinance of 1939 as amended, section 100-6. Since a dwelling is defined to be a building, it becomes necessary for us to determine how that word is defined by the ordinance. Section 100-3 defines it as follows: "A construction and/or erection intended for use and occupation as a habitation or for some purpose of trade, manufacturing, ornament, advertising, or other use constituting a fabric or edifice made of any kind of material such as a house, factory, store, church, or shed, including a wall, arbor, and/or solid fence over four feet high." In addition section 100-1 provides that the word "building" includes the word "structure".

This definition does not help appreciably in the resolution of the question presented. Under its terms a building includes almost every type of structure concerning which the provisions of the ordinance might deal. It then becomes evident that the basic question here presented is whether each half of the structure proposed to be erected may be considered a building or whether the entire structure must be considered to be such. If the former construction is adopted, then appel-

lants are seeking permission to build eight semi-detached two-family dwellings and the permits requested of the zoning officer ought to be issued. If, on the other hand, the latter construction should prevail, then appellant proposes to build four four-family dwellings and the permits should be refused. In our approach to this problem we are mindful that zoning regulations are in derogation of the common law, and for that reason must be strictly construed: Archbishop O'Hara's Appeal, 389 Pa. 35 (1957); Phi Lambda Theta Zoning Case, 400 Pa. 60 (1960).

It has been said that a common sense interpretation of the words "separate building" as used in connection with zoning restrictions would define those words to mean a structure in which there is a common entrance for all the component units thereof and ready access from one part of the structure to another. Thus, where those elements were not present, each unconnected unit has been held to be a "separate building": Fleishon v. Zoning Board of Adjustment, 6 D. & C. 2d 337, 348 (1955), affirmed per curiam, 385 Pa. 295 (1956). In that case, a two-story structure constructed around a quadrangle, containing 54 family dwelling units in 13 sections, 12 of which contained 4-family units, and one of which contained a 6-family unit, with no common hallways or entries, was held to be 13 separate buildings even though the sections were joined at each corner of the quadrangle by 10-foot overlays. In the course of the lower court's opinion it was noted that because of the problems there raised, the Philadelphia Zoning Ordinance was amended to define a "separate building" as follows: " 'Where any structure intended, designed or used for residential purposes is subdivided above the basement level into separate dwelling units which are not interconnected or served by a common entranceway at ground floor level, each such subdivision of the struc-

ture shall be considered a separate building, provided that each such separate building may have additional entranceways serving the units on the ground floor level' ": 6 D. & C. 2d 337, 348.

So, too, a fire ordinance of the City of St. Louis provided: " 'Building' shall be taken to mean any structure for the support, shelter, or inclosure of persons, animals or chattels; and when separated by division walls without openings, then each portion of such building shall be deemed a separate building." See City of St. Louis v. Nash, 266 Mo. 523, 181 S. W. 1145 (1916). In Rice v. Board of Police Commissioners of the City of Woonsocket, 39 R. I. 22, 97 Atl. 19 (1916), it was held, in determining whether a building for which a license to sell liquor was sought was within that distance from a school which would make it unlawful to sell liquor at that location, that structures on the  same lot and of the same owner placed one against the other were distinct buildings and that a new structure carrying the street number for which the license was sought, built against a partition wall of a shed so as to incorporate a shop on the first floor of a dwelling house without interior connection to the shed, no part of which was within the prescribed distance, was entitled to a license.

The zoning ordinance of the neighboring township of Tredyffrin defines: "Dwelling—Two Family Semi-Detached. A building designed for and occupied exclusively as a residence for two families with one family living wholly or partly over the other and having a party wall in common with an adjacent building." Under that definition, appellant's application for the permits here sought could properly be granted.

We have also examined certain of the decisions of our Supreme Court having to do with the construction of covenants restricting the use of land as contained in deeds. We have not been referred to any such which

define the term "two-family semi-detached dwelling". Neither has our own research uncovered any. However, it has been held that such a restriction prohibiting the erection of more than one "house" would not require that a structure built upon land so restricted be limited to a single family dwelling, since in the context in which the term was then used, the expressed intention was permissive of a multiple family dwelling: Ratkovich v. Randell Homes, Inc., 403 Pa. 63 (1961). Again, in Kauffman v. Dishler, 380 Pa. 63 (1955), it was held that a restriction which provided "that not more than one (1) house . . . shall be erected on each lot" did not prohibit the erection of a three-unit apartment house. In Satterthwait v. Gibbs, 288 Pa. 428 (1927), it was held that an apartment house is not repugnant to the restriction "dwelling house".

A close analysis of the particular section of the ordinance now being considered would lead us to conclude that the permits which the appellant seeks ought to be issued. It will first be noted that a single family detached dwelling is a permitted structure. We would take that to mean a free-standing house designed for the occupancy of but one family. Next, a single family semi-detached dwelling is permitted, and that we take to be a single family unit occupying a structure which has a wall in common with another structure abutting it on but one side. Thirdly, there is the two-family detached dwelling which this section permits; and that, we believe, designates a free-standing structure containing two family units positioned one above the other. Lastly, there is the two-family semi-detached dwelling, which, if it has any meaning at all, must mean the type of structure contemplated by the appellant here; i. e., two two-family units on either side of a common division wall.

This conclusion will not conflict at all with the statutory definitions of the term "two family dwelling" con-

tained in the Act of June 3, 1915, P. L. 954, sec. 4, pertaining to cities of the first class and the Act of June 7, 1901, P. L. 493, sec. 65, as amended by the Act of March 31, 1937, P. L. 168, sec. 1, which says: "The term 'two family dwelling' (duplex)—A separate building designated for, or occupied exclusively by, two families, one above the other, or an interior accessible door or passage way."

In our view the meaning of the ordinance is clear. Unless the term "two-family semi-detached dwelling" is considered to be the type of structure this appellant intends to build, no meaning whatever can be ascribed to it. We may not presume that the Board of Supervisors intended such a result. Indeed, we are required to presume that it intended that the entire ordinance be given effect. The Statutory Construction Act contains that requirement in connection with the interpretation of statutes: The Act of May 28, 1937, P. L. 1019, art. IV sec. 52 (2) ; Commonwealth v. Stingel, 156 Pa. Superior Ct. 359 (1944) ; Allentown v. Pennsylvania Public Utility Commission, 173 Pa. Superior Ct. 219 (1953). We must conclude, therefore, that the zoning officer and the board of adjustment have committed an error of law by refusing to issue the permits for which this appellant has applied. We must overrule the decision of the board of adjustment and direct that the permits issue. We enter the following order to that effect:

### Order

And now, April 10, 1963, the appeal of Joseph E. Palmer, Inc. from the decision of the Zoning Board of Adjustment of Easttown Township entered January 17, 1963, in cause no. 81 before said board is hereby sustained and the decision of said board of adjustment is hereby overruled; the zoning officer of said township is hereby directed to issue appropriate building per-

mits and certificates of occupancy to the said Joseph E. Palmer, Inc., in accordance with the applications made by said corporation in said cause.